# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| LANCE REBERGER,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>MICHAEL KOEHN, *et al.,*<br><br>　　　　　　　Defendants. | 3:15-cv-00468-MMD-CBC<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Lance Reberger ("Reberger") against Defendants Dante Famy, Michael Koehn, Gloria Carpenter, Dawn Jones, Romeo Aranas, and Georges-Pele Taino (collectively referred to as "Defendants"). Currently pending before the Court is a motion for summary judgment filed by Defendants. (ECF No. 57.) Reberger opposed, (ECF No. 103), and Defendants replied. (ECF No. 113). Having thoroughly reviewed the record and papers, the Court hereby recommends Defendants' motion for summary judgment be granted. (ECF No. 57.)[2]

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Defendants filed their motion on June 13, 2018 (ECF No. 57). Plaintiff was granted four extensions of time (for a total of 196 days) to file an opposition (ECF Nos. 68, 79, & 96). Defendants also received an extension of time to file a reply (ECF No. 110). Additionally, Plaintiff requested and was granted additional time to review his medical records (ECF No. 96), additional copies (ECF No. 112), an order requiring additional medical records be produced (*Id.*), and an order granting an *in camera* review of an incident DVD (*Id.*). Plaintiff also filed supplemental exhibits (ECF Nos. 104, 107, & 118) which the court has reviewed in preparing this report and recommendation. Finally, during this same time period, Plaintiff requested subpoenas (ECF No. 69, 71, 81, 84, & 101), legal supplies (ECF No. 76), sanctions (ECF No. 78), a full-day medical record review (ECF No. 85), and reconsideration of a previous order (ECF No. 92).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Procedural History

Reberger is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at High Desert State Prison ("HDSP") in Indian Springs, Nevada. However, the events giving rise to this case took place at Ely State Prison ("ESP") in Ely, Nevada, as well as HDSP. (ECF No. 57 at 1 – 2.) This case proceeds on Rebergers' Amended Complaint filed on July 17, 2017, which asserts a violation of the Eighth Amendment based on a deliberate indifference to Reberger's medical needs. (ECF No. 18). Count I is separated into two claims of alleged deliberate indifference to Reberger's medical needs: (1) Defendants' alleged delay in treating Reberger while he was housed in the ESP infirmary on August 1, 2014; and, (2) Defendants' alleged continued refusal to provide Reberger with seizure medication from August 7, 2014 onward. (ECF No. 17 at 6 – 7.)

Between 2017 to the present, the parties have engaged in discovery and protracted litigation. The period for discovery closed on April 30, 2018. (ECF No. 33.) Following the close of discovery, Defendants filed the instant motion for summary judgment seeking dismissal of this action. (ECF No. 57.)

### B. Factual Background Related to Reberger's Claims

This case arises from Reberger's claim that his Eighth Amendment right to be free from cruel and unusual punishment was violated due to Defendants' deliberate indifference to his medical needs. (ECF No. 18 at 4 – 10.4E.) Reberger alleges Defendants left him unconscious in his cell for thirty hours, resulting in permanent injuries to his brain, and limbs. (*Id.* at 84C.) Further, Reberger alleges that NDOC staff denied him seizure medication, even though he had a prescription from a hospital. (*Id.* at 4C.)

According to Reberger's allegations, on August 1, 2014, he was housed in ESP unit 1B 35. (ECF No. 103 at 4.) On that day, he allegedly started to feel fatigued and weakened. (*Id.*) After Reberger called medical for help, two Correctional Emergency

2

1  Response Team members escorted Reberger from cell 1B 35 to cell 9A 14 in the
2  infirmary at 11:00 a.m. (*Id.* at 5.) Reberger alleges that he began hitting the cell door to
3  notify nurse Gloria Carpenter that he wanted to have his vitals taken at 11:15 a.m. (*Id.*)
4  Carpenter refused to provide any assistance. Reberger claims that he then blacked out,
5  hit his head on the cell door and had a seizure. (*Id.*)

6  Defendants tried but were unable to revive Reberger. (*Id.*) After ESP personnel
7  sedated Reberger with Benzodiazepine, they ordered him to be returned to cell 9A 14
8  and for over ten hours and refused to send him to the hospital. (*Id.* at 5 – 6.) Reberger
9  further alleges that he had a stroke while in cell 9A 14. (*Id.* at 6.) After he woke up, he
10 had another seizure and fell off his bed. (*Id.*)

11 At 9:09 p.m., Reberger was transported to William Bee Ririe Hospital ("WBRH") in
12 Ely, Nevada. (*Id.*) Medical staff from WBRH diagnosed Reberger as being in a coma.
13 (*Id.*) After he was brought from WBRH to University Medical Center ("UMC"), doctors
14 diagnosed him with a grand mal seizure. (*Id.*) After he returned from UMC, he made
15 continued requests for seizure medication, but was denied. (ECF No. 18 at 84C – 94D.)
16 Reberger alleges that he now suffers permanent brain injuries, experiences weakness
17 and fatigue, and has stiff and numb limbs because Defendants left him unconscious in
18 his cell for a prolonged period and refused to follow the hospital's discharge instructions
19 to provide him with seizure medication. (*Id.*)

20       C.    Defendants' Motion for Summary Judgment

21 On June 13, 2018, Defendants filed a motion for summary judgment seeking
22 dismissal of this case. (ECF No. 57.) Defendants argue: (1) Reberger failed to exhaust
23 his claim regarding Defendants Famy and George; (2) Reberger failed to exhaust his
24 claims regarding the continued denial of seizure medication; and, (3) Defendants were
25 not deliberately indifferent. (*Id.* at 5 – 11.) In the alternative, Defendants argue that they
26 are entitled to qualified immunity. (*Id.* at 11 – 13.)

27 In response, Reberger argues: (1) he is not required to specifically name
28 defendants for purposes of exhaustion; (2) Defendants' statement of facts is incorrect;

1  (3) Defendants' standard for summary judgment is incorrect; (4) Defendants hid or
2  destroyed evidence; and, (5) Defendants are not entitled to qualified immunity. (ECF No.
3  103.)
4  　　　　　In their reply, Defendants reiterate all points raised in their motion and assert
5  Reberger is changing his story now that his allegations have been disproven by the
6  evidence. (ECF No. 113.)

## II.　LEGAL STANDARD

　　　　　Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

　　　　　Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan*

1  *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

///
///

## III. DISCUSSION

Reberger's claims can be bifurcated based on the timeline of events. The first aspect of his claim alleges NDOC staff delayed treatment while he was housed in the ESP infirmary on August 1, 2014. (ECF No. 18, at 8.) The second aspect of his claim alleges a continued denial of seizure medication from August 7, 2014 onward. (*Id.*, p. 9.) The analysis below will address each aspect of this case in turn.

### A. Eighth Amendment – Deliberate Indifference

A prison official violates the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to the serious medical needs of a prisoner. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir.2012). To meet the objective standard, the denial of a plaintiff's serious medical need must result in the " 'unnecessary and wanton infliction of pain.' " *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Serious medical needs are those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities' or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (citation and internal punctuation omitted).

To meet the subjective standard of deliberate indifference, a prison official must know that a prisoner faces a substantial risk of serious harm and disregard that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. Only where a prison "official 'knows of and disregards an excessive risk to inmate health and safety'" is the subjective element of the test satisfied. *Id.* (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)). A difference of opinion between a prisoner-patient and a prison medical provider regarding treatment does not amount to deliberate indifference. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Circ. 1981). The

6

1  conduct must consist of "more than ordinary lack of due care." *Farmer v. Brennan*, 511
2  U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  Not only must the
3  defendant prison official have actual knowledge from which he or she can infer that a
4  substantial risk of harm exists, but he or she must also draw that inference." *Id.* at 837.
5  The standard lies "somewhere between the poles of negligence at one end and
6  purpose or knowledge at the other[,]" *id.* at 836, and does not include "accidental or
7  unintentional failures to provide adequate medical care . . . ," *Estelle*, 429 U.S. at 105.
8  Finally, the plaintiff must prove that he was harmed by the indifferent actions, though
9  the harm need not be substantial. *Jett*, 439 F.3d at 1096.

10        Defendants assert summary judgment should be entered because they were not
11  deliberately indifferent to Reberger's medical needs. The court agrees that the
12  admissible evidence presented in this case establishes that Defendant's did not act
13  with deliberate indifference with respect to the "delayed treatment" of Defendant's
14  medical needs. However, the court finds there is a material issue of fact as to whether
15  Defendant's acted with deliberate indifference with respect to their failure to provide
16  Reberger with seizure medication after he was returned to ESP, as explained below.

17        1.    <u>Analysis - Delayed Treatment</u>

18        As noted above, the first aspect of Reberger's claim alleges NDOC medical staff
19  were deliberately indifferent to his serious medical needs because he blacked out due
20  to either a seizure or a stroke, and the ESP medical department did not treat him
21  immediately. (ECF No. 57 at Ex. J, p. 5.) Rather, according to Reberger, they waited
22  "twenty-four hours or more" to send him to the hospital. (*Id.*) Defendants argue they are
23  entitled to summary judgment because NDOC medical staff were not deliberately
24  indifferent regarding Reberger's treatment. (*Id.* at 9-10.) Specifically, Defendants argue
25  NDOC staff did not leave Reberger in his cell for thirty hours as claimed by Reberger,
26  medical staff acted immediately once Reberger appeared to be in distress, and a "man
27  down" was called. (*Id.* at 9.)

28

7

In the amended complaint, Reberger alleges that NDOC staff left him in an infirmary cell for "over 30 straight hours." (ECF No. 18 at 4.)  In his opposition, he claims that on August 1, 2014, he was brought to the ESP infirmary at 11:00 a.m. and that NDOC staff "left him to die for 10 hours" after he had a seizure. (ECF No. 103 at 5.) In support of his claim, Reberger cites his bed assignment chart (ECF No. 103 at Ex. KK), the pill call schedule (ECF No. 103 at Ex. II), and the Medical Report of Incident, Injury, or Unusual Occurrence about his symptoms on August 1, 2014. (ECF No. 60 at Ex. E.) Reberger's bed assignment shows that he was housed in cell 1B 35 on August 1, 2014, that he was brought to cell 9A 14 on the same day, and that he was brought to WBRH on the same day. (ECF No. 103 at Ex. KK.) Since the bed assignment chart does not include timestamps, it does not provide any support to Reberger's allegation. The pill call schedule shows that there is a pill call at 11:00 a.m. in the infirmary, but without additional evidence showing that Reberger was present, this provides no support for his claim. (ECF No. 103 at Ex. II.) Finally, the Medical Report of Incident, Injury, or Unusual Occurrence about Reberger's symptoms on August 1, 2014 shows that a "man down" was called at 2109 (9:09 p.m.) and that medical arrived at 2110 (9:10 p.m.). (ECF No. 60 at Ex. E.) This too provides no support for Reberger's claim that NDOC staff delayed treatment on August 1, 2014.

To rebut Reberger's claims, Defendants cite Reberger's Progress Notes (ECF No. 60 at Ex. C, p. 1), NDOC's Medical Report of Incident, Injury or Unusual Occurrence (ECF No. 60, at Ex. E), and a video recording of the incident on August 1, 2014. (ECF No. 108 at Ex. A.) Reberger's Progress Notes show that he was brought to the ESP infirmary at 1800 (6:00 p.m.) on August 1, 2014, not 11:00 a.m. as Reberger alleges. (ECF No. 60 at Ex. C, p. 1.) His Progress Notes also show that a man down was called on at 2109 (9:09 p.m.) on August 1, 2014. (*Id.*) The Medical Report of Incident, Injury or Unusual Occurrence also shows that a "man down" was called at 2109 (9:09 p.m.) and that medical arrived a minute later at 2110 (9:10 p.m.) (ECF No. 60 at Ex. E.) The video of the incident corroborates the information in The Medical

1 Report of Incident, Injury or Unusual Occurrence because it shows that at approximately 9:30 p.m., medical was able to safely enter Reberger's cell in the infirmary after he was restrained. (ECF No. 108 at Ex. A., at 00:00:58.) The video also shows that Reberger was loaded into an ambulance departing for WBRH at 10:20 p.m. (*Id.*, at 00:05:05.) From the time Reberger entered the infirmary to the time he departed to the hospital was approximately three hours and twenty minutes. From the time NDOC officials noticed that Reberger was in distress while in the infirmary, to the time he departed to the hospital was approximately one hour and eleven minutes.

Reberger can satisfy the objective standard of the deliberate indifference test because he claims that he suffered brain injuries resulting in memory loss, light sensitivity, and back pain inhibiting his ability to walk and sleep. (ECF No. 18 at 8 – 9.) However, Reberger is unable to satisfy the subjective standard of the test because he has no evidence to prove that NDOC officials delayed treatment on August 1, 2014. On the other hand, Defendants have introduced ample admissible evidence to demonstrate they didn't deny him any necessary treatment or care, and promptly responded when Reberger appeared to be in distress while he was housed in the infirmary. (ECF No. 60 at Ex. C, p. 1; Ex. E); (ECF No. 108, at Ex. A.)

While Reberger requested and was denied an IV, around 1800 (6:00 p.m.), there is no evidence suggesting it was necessary. (ECF No. 60 at Ex. C, p. 1.) Since a difference of opinion between a prisoner-patient and a prison medical provider regarding treatment does not amount to deliberate indifference, this would not be enough to satisfy the subjective standard of the test. *Franklin* 662 F.2d 1344. Contrary to Reberger's claim that NDOC staff left him unconscious in his cell for thirty hours, Defendants have put forward ample admissible evidence showing that they promptly provided him with all necessary medical care while he was housed in the infirmary at ESP on August 1, 2014. (ECF No. 108, at Ex. A.) Therefore, the Court recommends that Defendants' Motion for Summary Judgment on the first claim be granted because

there is no genuine issue of fact regarding whether Defendants' were deliberately indifferent.

### 2. Analysis - Continued Denial of Seizure Medication

Reberger also argues Defendants were deliberately indifferent to his serious medical needs because he required seizure medication, but Defendants continually denied his request after he returned from UMC. (ECF No. 18 at 7.) Defendants argue they are entitled to summary judgment because he was never diagnosed with a seizure disorder, nor was he prescribed seizure medication. (ECF No. 57 at 10 – 11.)

The crux of Defendants' argument is that Reberger's symptoms were the result of his own self-harming behavior, not of a seizure disorder. (ECF No. 57 at 10.) Defendants acknowledge that they denied Reberger any seizure medication after August 7, 2014. (*Id.*) However, they claim this was not deliberate indifference to Reberger's medical needs because he did not have a seizure disorder that required continuous medication. (ECF No. 57 at 10.) In support, Defendants cite Reberger's Progress Notes from NDOC (ECF No. 60 at Ex. C.), and Reberger's Physician's Orders (ECF No. 60 at Ex. D.) In addition, Defendants point to Dr. Koehn's statement that, "Mr. Reberger has not been diagnosed with seizure medication because he does not have a seizure disorder," (ECF No. 60 at Ex. A, ¶ 16) and Famy's statement that, "[t]o…[his] knowledge, Mr. Reberger was not diagnosed with a seizure disorder and he did not have seizure medication prescribed by doctors at UMC. He did not have any order for seizure medication." (ECF No. 60 at Ex. L, ¶ 9.)

Reberger disputes the claim that he was never diagnosed with a seizure disorder, and that he was never prescribed seizure medication. (ECF No. 103 at 3.) Reberger asserts that he was diagnosed with a seizure disorder called "Status Epilepticus," and that UMC prescribed him 500 milligrams of a seizure medication called Keppra. (*Id.*) In support of his assertion, Reberger cites his Discharge Instructions from UMC on August 6, 2014. (ECF No. 103 at Ex. CC.) This document states that Reberger's discharge diagnosis was Status Epilepticus, and one of his

1 discharge medications was Keppra. (*Id.*) The discharge papers directly conflict with both Dr. Koehn and Famy's statements' that Reberger did not have a seizure disorder or an order for seizure medication in his chart. Defendants cannot establish that there is no issue of fact related to whether Reberger was diagnosed with a seizure disorder and whether he was prescribed seizure medication. Therefore, Defendants are not entitled to summary judgement on the second aspect of Reberger's claim based solely on a lack of deliberate indifference to Reberger's medical needs.

### B. Exhaustion of Administrative Remedies

However, even if there is a material issue of fact on the second aspect of Reberger's claim, Defendants argue that they are still entitled to summary judgment because Reberger failed to properly exhaust his administrative remedies. (ECF No. 57 at 5 – 7.) The court agrees.

#### 1. Legal Standard

An inmate alleging a violation of his civil rights pursuant to 42 U.S.C. § 1983 must exhaust his administrative remedies prior to seeking judicial relief. 42 U.S.C. § 1997e(a); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (exhaustion of administrative remedies is a mandatory requirement); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks omitted). Proper notice requires an inmate's grievance to alert prison officials to "the nature of the wrong for which redress is sought." *Griffin v. Arpaio,* 557 F.3d 1117, 1120 (9th Cir. 2009). The purpose of the PLRA exhaustion requirement is to allow prison officials the opportunity to address complaints internally before allowing a federal lawsuit to proceed. *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016).

The Supreme Court held in *Jones v. Bock* that a prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement. 549 U.S. 199, 218 (2007). "If the…court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003).

When an NDOC inmate has a grievance, the administrative remedy available to them are the processes described in Administrative Regulation ("AR") 740. (ECF No. 57 at Ex. H.) The inmate grievance process has three distinct steps: an informal level, a first level, and a second level. (ECF No. 57 at Ex. H, at 4 – 7, §§ 740.5 – 07.) The inmate begins the grievance process by filing an informal level grievance. (*Id.* at 4 – 6, §740.05.) Following receipt of a decision at the informal level of review, an inmate who disagrees with the decision may appeal to the first formal level of review. (*Id.* at 6 – 7, § 740.06.) Similarly, if an inmate disagrees with a decision at the first level of review, the inmate may appeal to the second level of review within five calendar days of receipt of the prisoner's decision. (*Id.* at 7, § 740.07.) If an inmate fails to file a timely appeal from the first level to the second level, the inmate's appeal is procedurally barred. (*Id.* at 7, § 740.06(4)(A).) When this occurs, an inmate cannot restart the grievance process on the same issue as this is considered an abuse of the inmate grievance process. (*Id.* at 8, § 740.09(2)(B).)

### 2. Analysis – Continued Denial of Medication

Based on the evidence presented, it is clear that at no level of either Grievance 20006-29-86468 or Grievance 2006-29-9333 did Reberger grieve, let alone discuss, his continued denial of seizure medication following his return from UMC. (ECF No. 57 at Ex. I; *Id.* at Ex. J.) Defendants argue that Reberger's failure to mention or discuss the continued denial of seizure medication in his grievance means he did not properly exhaust. (ECF No. 57 at 7.) Reberger does not address this argument. (ECF No. 103.)

Although Reberger does mention being denied medication, it was before he was brought from ESP to UMC, not after his return to HDSP. (ECF No. 57 at Ex. I, p. 2.) These allegations are specific to the actions of Defendants Carpenter, Koehn, and Jones while Reberger was housed at ESP on August 1, 2014. (ECF No. 57 at Ex. I; *Id.* at Ex. J.) Since Reberger did not mention his continued denial of seizure medication after his return from the hospital on August 7, 2014, in any level of either of the grievances at issue, there can be no argument that he put NDOC on notice regarding

this claim. Accordingly, Reberger did not properly exhaust his administrative remedies regarding the second aspect of his claim related to the alleged continued denial of seizure medication. Because this court concludes that Reberger has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim. *Wyatt*, 315 F.3d at 1120. Therefore, the court recommends that Defendants' Motion for Summary Judgment on the second aspect of his claim also be granted.

## IV.   CONCLUSION

Based upon the foregoing, the Court recommends Defendants' motion for summary judgment be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 57) be **GRANTED**.

**DATED**: February 8, 2019.

_____
UNITED STATES MAGISTRATE JUDGE