UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

LANCE REBERGER,

Plaintiff,

v.

MICHAEL KOEHN, *et al.*,

Defendants.

Case No. 3:15-cv-00468-MMD-CBC

ORDER ACCEPTING AND ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE CARLA B. CARRY

**I. SUMMARY**

Before the Court is the Report and Recommendation of United States Magistrate Judge Carla B. Carry ("R&R") relating to Plaintiff's civil rights amended complaint ("Amended Complaint") filed against Defendants[1] (ECF No. 4-1) and Defendants' related motion for summary judgment ("Motion") (ECF No. 57). (ECF No. 120.) In the R&R, Judge Carry recommended that this Court grant summary judgment for Defendants. (ECF No. 120 at 1, 13.) Plaintiff filed an objection ("Objection"). (ECF No. 125.)[2] Finding no need to await a response from Defendants, the Court overrules Plaintiff's Objection and accepts and adopts the R&R's ultimate findings and recommendations.[3]

**II. BACKGROUND**

Plaintiff who is an inmate in custody of the Nevada Department of Corrections ("NDOC") brought this case under 42 U.S.C. § 1983. (ECF Nos. 4-1.) The events giving

///

---

[1]Defendants are Dante Famy, Michael Koehn, Gloria Carpenter, Dawn Jones, Romeo Aranas and Georges-Pele Taino. (ECF No. 17 at 3–4; ECF No. 120 at 1; ECF No. 57 at 1.)

[2]Plaintiff was provided additional time and copy work to file his Objection (ECF Nos. 122,124), but nonetheless still filed his Objection belatedly.

[3]In addition to the Motion and R&R, the Court has considered Plaintiff's response (ECF No,103) and Defendants' reply (ECF No. 113).

rise to this case occurred while Plaintiff was housed at Ely State Prison ("ESP") in Ely, Nevada and at High Desert State Prison ("HDSP") in Indian Springs, Nevada. (ECF No. 57 at 1–2; ECF No. 4-1 at 2; ECF No. 17 at 3.)

Following screening, Plaintiff was allowed to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim related to alleged delays and deprivation of treatment. (ECF No. 17 at 8.) While Plaintiff filed another "Amended Complaint" the same day, which followed the issuance of this Court's screening order (ECF No. 18)—and is substantively the same as ECF No. 4-1, this action proceeded on the single deliberate indifference count as permitted in the Court's screening order (ECF No. 17). (*See* ECF No. 19.)

The delay of treatment allegation particularly relates to Plaintiff suffering from "a stroke and seizure" while in the infirmary at ESP, beginning August 1, 2014, and Plaintiff's contention that prison officials refused Plaintiff medical help for over 30 hours. (ECF No. 17 at 4, 6; ECF No. 4-1 at 5; ECF No. 103 at 4–5.) The deprivation allegation pertains to Plaintiff's assertion that Defendants refused to provide Plaintiff with seizure medication from August 7, 2014 onward—after Plaintiff's return from University Medical Center ("UMC"). (ECF No. 17 at 4–5, 6–7; ECF No. 120 at 3.) Plaintiff's deliberate indifference claim proceeded against all Defendants. (ECF No. 17 at 7.)

Defendants move for summary judgment on Plaintiff's screened Eighth Amendment claim. (ECF No. 57.) Further background regarding Plaintiff's allegations and Defendants' responses are explained in detail in the R&R, which this Court adopts.

### III. LEGAL STANDARD

#### A. Review of Magistrate Judge's Recommendation

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). Where a party fails

to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection."). Thus, if there is no objection to a magistrate judge's recommendation, then the court may accept the recommendation without review. *See, e.g.*, *Johnstone*, 263 F. Supp. 2d at 1226 (accepting, without review, a magistrate judge's recommendation to which no objection was filed).

In light of Plaintiff's Objection, this Court finds it appropriate to engage in a *de novo* review to determine whether to adopt Magistrate Judge Carry's R&R.

**B.    Summary Judgment Standard**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the

motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Moreover, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

**IV. DISCUSSION**

In the R&R, Judge Carry divides Plaintiff's deliberate indifference claim for relief based on the two distinct assertions Plaintiff makes: (1) Defendants' delay in treating Plaintiff while Plaintiff was housed in the ESP infirmary on August 1, 2014; and (2) Defendants' refusal to provide Plaintiff with seizure medication from August 7, 2014 onward. (ECF No. 17 at 6–7; *see* ECF Nos. 1-1, 18; ECF No. 120 at 2.) Judge Carry recommended granting summary judgment in Defendants' favor on both assertions. (ECF No. 120.)

In the Objection, Plaintiff raises various material and immaterial objections to the R&R, and particularly objects to Judge Carry's division of the deliberate indifference claim, contending that both arguments—the delay in treatment and the refusal to provide seizure medication are "intertwined." (*See generally* ECF No. 125; *see also id.* at 12, 13.) However, Plaintiff's lawsuit proceeded as per the findings in the Court's screening order. (ECF Nos. 17, 19.) To be clear, the screening order permitted Plaintiff to proceed on his deliberate indifference claim, finding:

> Plaintiff states a colorable claim for deliberate indifference to serious medical needs. Based on the allegations, after Plaintiff suffered from a stroke and a seizure, prison officials *delayed seeking further medical* help for Plaintiff for

> over thirty (30) hours causing Plaintiff brain injuries and physical injuries. Additionally, prison officials *refused to give Plaintiff seizure medication and continue to deny Plaintiff his seizure medication* despite Plaintiff suffering two seizures in one month.

(ECF No. 17 at 6–7 (emphasis added). Thus, as a preliminary matter the Court adopts the R&R in considering the single claim as two separate issues. Here, the Court considers Plaintiff's delayed indifference claim as tailored to Plaintiff's allegation that he was in the ESP infirmary, starting August 1, 2014, for over 30 hours. (*Id.*) Plaintiff's denial of seizure medication claim is *tailored to the time* after Plaintiff alleges he was to be provided with seizure medication based on the "recommendation" and prescription of doctors at UMC. (*See, e.g., id.* at 4–5, 6–7; ECF No. 4-1 at 7 (asserting that "HDSP doctors . . . were medically deliberate indifferent when refusing to follow UMC recommendation on putting [Plaintiff] on seizure medication to prevent any future seizures").)

Ultimately, the Court concludes that Plaintiff fails to establish that Defendants were deliberately indifferent to his serious medical needs and accordingly adopts the R&R's recommendation to grant summary judgment for Defendants.

**A.    Legal Framework**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. Although conditions of confinement may be restrictive and harsh, they may not deprive inmates of "the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must provide prisoners with "food, clothing, shelter, sanitation, *medical care*, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995) (emphasis added). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

"To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v.*

*McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). The subjective requirement demands that the prison official must be aware of and disregard the risk to the inmate's health or safety. *Id.* at 837; *see also id.* at 834 (internal quotation and citation omitted) ("The second requirement follows from the principle that only the unnecessary wanton infliction . . . implicates the Eighth Amendment."). "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations and citation omitted). But ultimately, a showing of deliberate indifference requires a plaintiff show (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (2) harm caused by the indifference. *Id.*

**B.     Analysis**

**1.     Preliminary Issues Regarding Video Evidence**

In his Objection, Plaintiff contends that there are three videos that could substantiate his arguments that Defendants failed to treat and provide him with medical care. (*See, e.g.*, ECF No. 125 at 17.) Plaintiff asserts that the first video documents an initial "man down" where Defendants Koehn, Jones, and Carpenter directed ESP personnel to put Plaintiff in his bed because they "could not revive" Plaintiff and "left him to die for over 10 hours until [Plaintiff] came out of sedation." (ECF No. 125 at 7–8.) Plaintiff claims that Defendants destroyed this first video to avoid liability. (*Id.*)

Plaintiff asserts that a second video (*see* ECF No. 108), shows a "second man down" after he came out of sedation and fell off the ESP infirmary bed due to continuing seizures and ultimately led to Defendants calling 911, which resulted in Plaintiff being taken to the hospital. (*See, e.g.*, ECF No. 125 at 3, 8.) Plaintiff argues throughout his Objection that statements made on this video supports his contention that he was admitted to the ESP infirmary for a longer duration than Defendants' evidence—which he alleges the R&R disproportionately relies on—supports. (*Id.* at 8–9.) Plaintiff argues that the Magistrate Judge did not rely on this video to the extent it supports the length of time he was housed in the ESP infirmary. (*Id.*)

Plaintiff asserts that a third video exists. He claims this video documents a third "man down" and is associated with events on "9-9-14 between 5:00 P.M. and 6:00 P.M. under grievance 2006-29-89813." (ECF No. 125 at 17; *see also* ECF No. 4-1 at 8 (noting Plaintiff collapsed on this day).)

In light of the screening order discussed *supra*, the Court finds that the third video here would only go to Plaintiff's contention that Defendants failed to provide him with seizure medication. Further, the Magistrate Judge reviewed and considered the second video. (*See, e.g.*, ECF No. 120 at 8 (citing ECF No. 108).)[4] To the extent Plaintiff argues that both the second and first videos create a dispute that Defendants were deliberately indifferent in providing him treatment while he was in the infirmary at ESP, the Court finds to the contrary, *infra*.

### 2. **Delayed Treatment**

As to the first part of Plaintiff's claim—delay in treatment on August 1, 2014—Judge Carry recommended granting summary judgment for Defendants upon finding that the admissible evidence establishes that Defendants did not act with deliberate indifference. (ECF No. 120 at 7–10.) Plaintiff objects to both Judge Carry's objective and subjective findings on the issue, despite the former being in his favor. (ECF Co. 125 at 10–11; ECF No. 120 at 9.) The Court adopts Judge Carry's recommendation.

As an initial matter, the Court notes that even in his Objection Plaintiff is inconsistent about the duration of time he was housed "unconscious" in the ESP infirmary. (*See generally* ECF No. 125.) As noted, the screening order allowed Plaintiff to proceed on a deliberate inference claim based on his allegation of an over 30-hour delay in treatment. In his Objection Plaintiff claims that he was unconscious in the infirmary "on 8-1-14 at 11:30 am through til 8-3-14." (*Id.* at 2; *see also id.* at 4, 11.) However, Plaintiff's own exhibit (ECF No. 103-1) contradicts this statement. (*See id.* at 2 (showing Plaintiff underwent

///

///

---

[4]ECF No. 108 is the same video referred to as both Exhibit A and Exhibit AA.

neurology consultation at UMC on August 2, 2014); *see also* ECF No. 125 at 3–4 (conceding Plaintiff was wrong about being in the ESP infirmary for over 30 hours).)

As he did in his opposition to Defendants' Motion (ECF No. 103 at 5), Plaintiff alternatively argues that he was in the ESP infirmary unconscious for over 10 hours (*see, e.g.*, ECF No. 125 at 4). He argues that the hours make no difference (*id.*), yet he focuses extensively on the hours he was in the ESP infirmary (*see generally* ECF No. 125).

In any event, while Plaintiff's Objection is hard to follow at points, Plaintiff makes the following contentions about what occurred during his hours in the ESP infirmary: (1) he was admitted to the infirmary sometime after 11 A.M. (*id.* at 6); (2) after he had a seizure and blacked out around 11:30 A.M., Defendants Carpenter and Jones "sedated him with a Benzodiazopene [sic] and ordered that [he] be layed[sic] on his cell bed mattress" (*id.* at 7, 8; *see also* ECF No. 17 at 4); and (3) Plaintiff awoke from sedation—after he had been laying on the infirmary bed for "over 10 hours"—at which point he continued seizing and medical was called, then 911 was called, and Plaintiff was taken away in an ambulance (*id.* at 8).

It appears to this Court that Plaintiff's claim is not really a claim of "delayed" treatment but one of improper treatment—that he believes Defendants should have provided him with some other treatment beyond sedation. (*See, e.g.*, 125 at 8 (stating that Plaintiff "was pallid" and Defendants sedated him "instead of calling 911 and an ambulance to immediately send [Plaintiff] to WBRH").) To the extent Plaintiff believes that he should have been treated otherwise than being sedated, his belief amounts to a difference of opinion between he and his medical provider, which cannot support a finding of deliberate indifference. *See, e.g.*, *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (holding that a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs); *Franklin v. Oregon, State Welfare Div.*, 662 F.3d 1337, 1344 (9th Cir. 1981) (providing that a "difference of opinion between a prisoner-patient and a prison medical provider regarding treatment does not amount to deliberate indifference").

As Plaintiff notes, he continued to seize after he came out of sedation, and at this point a man down was called for medical. The R&R finds as Plaintiff concedes in his Objection—that a "man down" was called "on 8-1-14 at 2109 (9:09 P.M.) . . . and Johnson [(Medical)] arrived at 2110 (9:10 P.M.)." (*Compar*e ECF No. 125 at 8 *with* ECF No. 120 at 8–9*; see also* ECF No. 60-5[5] (sealed) (Plaintiff's "Medical Report of Incident, Injury or Unusual Occurrence (recording incident as occurring at "Time: 2109;" Medical was immediately called—"Time: 2109;" Medical arrived a minute later at "Time: 2110")); ECF No. 108 (Plaintiff's "Exhibit A – August 1, 2014 DVD" (showing medical entering Plaintiff's cell at "approximately 9:30 p.m." after Plaintiff was sufficiently restrained by other staff, and later Plaintiff being loaded into an ambulance departing at "approximately 10:20 p.m.")); ECF No. 60-3 (sealed) (chronicling events on "8/1/14" including and beyond the "man down" at "2109" underlying Plaintiff's delay treatment claim).)

The Court agrees with Judge Carry that this evidence supports a conclusion that Defendants were not deliberately indifferent as to Plaintiffs' "delayed treatment" allegation. For one, at most there was a 21-minute-delay between when Medical was called after Plaintiff awoke from sedation and when Medical was able to *enter* Plaintiff's cell due to Plaintiff needing to be restrained for safety reasons. (*See* ECF No. 108 (Plaintiff's "Exhibit A – August 1, 2014 DVD").) Plaintiff departed in an ambulance approximately 50 minutes after medical entered his cell to attend to him. (*Id.*) Plaintiff was otherwise under sedation in the ESP infirmary for the "over 10 hours" he claims is at issue. Thus, even accepting Plaintiff's claim that he was in the infirmary for over 10 hours, Defendants' failure to provide Plaintiff with what amounts to a claim of "proper" treatment, at most arises to a claim of gross negligence. Gross negligence falls short of a finding of deliberate indifference. *See, e.g., Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice,

///

---

[5]In his Objection, Plaintiff claims there is no ECF No. 60. (ECF No. 125 at 5.) ECF No. 60 is a single page filing—on the docket—that merely indicates that Plaintiff's medical records (ECF Nos. 60-1 through ECF No. 60-9) are being filed under seal.

or even gross negligence, does not suffice."). Accordingly, the Court accepts and adopts the R&R's recommendation that Defendants be granted summary judgment on Plaintiff's claim that Defendants delayed treating him for "over 10 hours" in the ESP infirmary.

### 3. Denial of Seizure Medication

As to the second part of Plaintiff's claim, Judge Carry recommended granting summary judgment for Defendants based on Plaintiff's failure to properly exhaust his administrative remedies on this issue at any level of the grievance process. (ECF No. 120 at 7–13.)[6] Plaintiff did not address Defendants' particular exhaustion argument in his response to their Motion (*see generally* ECF No. 103). However, in his Objection and without citing to evidence, Plaintiff asserts it "is not true" that he failed to exhaust this allegation. (ECF No. 125 at 13.) This Court accepts and adopts the R&R on the issue.

The Prison Litigation Reform Act of 1996 ("PLRA"), codified as 42 U.S.C. § 1997e, provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The "exhaustion requirements applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). The PLRA requires "proper exhaustion"—meaning that a prisoner must use "all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90–91.

When an NDOC inmate has a grievance the inmate must engage in the three-step grievance remediation process described in Administrative Regulation ("AR") 740. (ECF No. 57-1.) Under AR 740, an inmate must grieve his complaints in sequential order—
///

---

[6]Judge Carry separately concluded that there is an issue of material fact as to whether Defendants were deliberately indifferent in failing to provide Plaintiff with prescribed seizure medication. (ECF No. 120 at 10–12.) But, failure to exhaust is a bar to a summary judgment finding on the issue.

informal level, then first level, then second level—to resolve his redressable claims. (*Id.* at 5–10.) An inmate's failure to exhaust his administrative remedies will result in dismissal of his claim(s). *See, e.g.*, *McKinney v. Carey*, 311 F.3d 1198, 1200–01 (9th Cir. 2002) ("Requiring dismissal without prejudice when there is no presuit exhaustion provides a strong incentive that will further . . . Congressional objectives; permitting exhaustion *pendente lite* will inevitably undermine attainment of them.").

Here, as noted Plaintiff failed to grieve at any level of his pertinent grievances the issue of him being denied seizure medication after his return from UMC. (*See* ECF Nos. 57-2, 57-3, 57-4; ECF No. 120 at 12–13.) In his Objection Plaintiff appears to argue that he grieved his denial of seizure medications because he filed grievances 2006-29-86468 and 2006-29-9333 "after [he] returned to ESP from UMC." (ECF No. 125 at 14.) However, by this statement Plaintiff conflates the timing of his grievance with the substance of his grievance. The R&R clearly faulted Plaintiff in substance. (ECF No. ECF No. 120 at 12–13.) As the R&R notes, while Plaintiff raised an issue of being denied medication in a second level grievance, the grievance indicates that the denial pertained to seizures before he was seen at UMC (ECF No. 57-2 at 3)—and thus before UMC doctors recommended or prescribed seizure medication. To be clear, Plaintiff's claim of denial of seizure medication claim is premised on the fact that UMC doctor's recommended and prescribed him such medication. (*See* ECF No. 4-1 at 6–7.)

Plaintiff further contends that Defendants conceded that the issue was exhausted. (*See* ECF No. 125 at 15 (citing ECF No. 57 at 7).) However, the page in Defendants' Motion that Plaintiff cites states, *inter alia*, that "[Plaintiff failed to grieve his claim . . . the continued denial of seizure medication." (ECF No. 57 at 7.)[7]

///

///

---

[7] Without citation to evidence, Plaintiff claims in his Objection that Defendants failed to provide all second level grievance filings, "nor responses, if any, nor allowed [Plaintiff] to sign any response." (ECF No. 125 at 15.) However, as noted, Plaintiff failed to respond to Defendant's failure to exhaust argument in his response to Defendants' Motion (*see generally* ECF No. 103) and thus he also failed to make these allegations.

11

1    Plaintiff nonetheless argues that he properly exhausted the claim. (ECF No. 125 at
2    15–16.) He posits that the law does not require him to "continue mentioning that
3    defendants denied him seizure medication." (*Id.* at 16.) However, continual mention is not
4    the issue here. The issue is failure to grieve the denial of seizure medication at any point
5    in the pertinent grievances.[8] Even the Ninth Circuit case law Plaintiff cites (*see* ECF No.
6    125 at 16) requires him to "provide enough information . . . to allow prison official to take
7    appropriate responsive measures." *Griffin v. Arpaio*, 557 F.3d 1117, 1121 (9th Cir. 2009)
8    (internal quotations and citation omitted). Plaintiff's failure to grieve at any level the denial
9    of seizure medication after UMC's recommendation and prescription—as alleged in his
10   Amended Complaint (ECF No. 4-1 at 6–7)—renders dismissal, without prejudice,
11   appropriate. As in *Griffin*, Plaintiff's failure to exhaust deprived Defendants of the
12   opportunity to take appropriate responsive measures. *Id.* Accordingly, the Court grants
13   summary judgment on Plaintiff's claim premised on the allegation of denial of seizure
14   medication based on Plaintiff's failure to exhaust the issue.

   In sum, the Court accepts and adopts the R&R's recommendation (ECF No. 120)
   and grants Defendants' motion for summary judgment (ECF No. 57) on Plaintiff's
   remaining claim of deliberate indifference to serious medical needs.

**V.   CONCLUSION**

   The Court notes that the parties made several arguments and cited to several cases
   not discussed above. The Court has reviewed these arguments and cases and determines
   that they do not warrant discussion as they do not affect the outcome of the motion before
   the Court.

   It is therefore ordered that the Report and Recommendation of Magistrate Judge
   Carla B. Carry (ECF No. 120) is accepted and adopted in its entirety.

   ///

---

[8]The Court need not address Plaintiff's concerns regarding exhaustion as to particular Defendants, because it is evident Plaintiff did not grieve the substantive issue. (ECF No. 15–16.) The Court also declines to address Defendants' alternative qualified immunity argument. (ECF No. 57 at 11–13; ECF No. 120 at 3.)

It is further ordered that Defendants' motion for summary judgment (ECF No. 57) is granted.

It is further ordered that Plaintiff's Objection (ECF No. 125) is overruled.

The Clerk of Court is directed to enter judgment in accordance with this order and close the case.

DATED THIS 15th day of March 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE